IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL PELINI<br>*Administrator of the Estate of Richard A.*<br>*Pelini on behalf of*<br>THE RICHARD A. PELINI TRUST,<br>RICHARD A. PELINI<br>*Individually/Deceased*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD S. AMSLER *et al.*,<br><br>Defendants. | Civil Action No. 23-1685<br><br>Chief Judge Mark R. Hornak<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 61 |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Court grant in part and deny in part the Motion to Dismiss, ECF No. 61, filed on behalf of Defendants Donald S. Amsler ("Amsler"), D.S.A. Smart Fund, LLC ("DSA Smart Fund"), and John Muratore ("Muratore") (collectively, the "Moving Defendants").

**II.  REPORT**

   **A.  FACTUAL BACKGROUND**

Plaintiff Michael Pelini ("Pelini") brings this action as the administrator of his father's estate and on his deceased father's behalf.[1] ECF No. 1. At the heart of Pelini's claims is an alleged "bait and switch" transaction that occurred when Amsler convinced Pelini's elderly father to first

---

[1] It is not disputed that this Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a). Pelini alleges that he is an Ohio resident, that no Defendant is a citizen of Ohio, and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. ECF No. 1 ¶ 15. Pelini asserts that venue is proper because the alleged solicitation and fraudulent activity occurred in this judicial district, where Amsler resides and where the elder Pelini's bank accounts were based. Id. ¶ 17.

1

invest in a fraudulent oil and gas venture and then to transfer his investment to an equally fraudulent life settlement product. Id. ¶¶ 10-13. Pelini alleges that his demands for the return of the principal have been ignored and thus the investment funds "have been converted by the Defendants." Id. ¶¶ 42, 49. Pelini seeks to recover his father's $250,000 investment and brings state law claims for common law fraud, conspiracy to commit fraud, breach of fiduciary duty, and conversion.

Pelini names Amsler as a defendant, along with Amsler's solely owned DSA Smart Fund. In addition, Muratore, Rustin Bruson, Thomas Brad Pearsey, Jeremy Dillon, and James Ikey are named as defendants based on their alleged operation, control, participation in, or coordination of the various defendant Heartland commercial entities through which investments in the fraudulent oil and gas scheme and the life settlement scheme were solicited and funneled. These entities include Heartland Life Settlement Fund 1, LLC; Heartland Life Settlements 1, Portfolio; Heartland Life Settlements, LLC; and their successor AG Wealth Systems, LLC. ECF No. 1 at 7-10.[2]

The following factual allegations are taken from the Complaint and at this stage of the litigation are accepted as true.

Beginning in October 2020 through September 2021, Donald Amsler represented himself as authorized to solicit investments on behalf of Heartland Life Settlements, The Heartland Group and DSA Smart Fund. Id. ¶ 30. In that capacity, he repeatedly solicited Pelini and his father to invest in Heartland's oil and gas projects. These projects were promoted by Muratore and Pearsey. Amsler presented Heartland's solicitation materials that included descriptions of Muratore and

---

[2] Pelini voluntarily dismissed Heartland Group Ventures, LLC ("HGV") as a defendant on February 18, 2024. ECF No. 9. HGV was placed in receivership during litigation filed against it, related entities, and certain individuals by the United States Securities and Exchange Commission. The litigation sought to enjoin the defendants from continuing and profiting from a Ponzi scheme that involved material misrepresentations made to investors regarding Heartland oil and gas projects. See SEC v. The Heartland Group Ventures, LLC, et al., No. 4:21-cv-1310 (N.D. Tex. Dec. 1, 2021).

2

Pearsey's experience and participation in the investments, and described the "huge returns" that were "unparalleled in the oil and gas sector."[3] Id. ¶ 31. Amsler represented that the returns were based on Heartland's investments in the Permian Basin, which was described by the promotional materials as providing 40 percent of all oil production in the United States and 15 percent of all gas production. Id. The materials also extolled the potential growth in oil and gas production of the Delaware Basin and described "the large returns on which the Pelinis could rely." Id. These returns were based on four existing Heartland projects in or close to the Permian Basin. However, these representations were untrue, and Pelini alleges that Amsler knew they were false when made. Id. ¶ 33.

The Pelinis were persuaded by Amsler to invest $250,000 and tendered a check dated September 27, 2021 from the elder Pelini's trust account to DSA Smart Fund. Id. ¶ 34. Pelini added the designation "Oil & Gas Investment – 21." Id. Amsler deposited the check in the Smart Fund on September 30, 2021. Rather than transfer the funds to Heartland for the elder Pelini's intended investment, Amsler told the Pelinis that he was holding "the Principal in escrow" to act as the elder Pelini's "fiduciary agent and investment advisor." Id. ¶ 35.

For the next eight months, Amsler delayed presenting the Pelinis with a Heartland subscription agreement for the oil and gas investment that they believed they had purchased. Id. ¶ 36. Beginning in December 2021, Amsler gave the Pelinis several excuses for the delay and promoted an alternative Heartland Life Settlement Investment. Id. ¶¶ 36-37. Amsler told the Pelinis that the delay was due to "internal restructuring" at Heartland and lauded the life settlement investment as an opportunity for a "more secure, higher return alternative." Id.

---

[3] The Complaint refers to Exhibit "C" as a copy of the promotional materials shown to the Pelinis. Other than a copy of the SEC Complaint, no other exhibits were filed with the Complaint. See ECF No. 1 at 86-90.

Pelini alleges that when Amsler made these representations, Amsler knew that his statements about the reasons for the delay and for redirecting the elder Pelini's investment were false. Id. ¶ 38. Amsler knew that on December 1, 2021, the SEC commenced fraud litigation against, among others, Heartland and Muratore for perpetrating a multi-million-dollar Ponzi scheme through the solicitation of oil and gas investments by participating agents such as Amsler. Id. ¶ 38. Amsler also knew that the material actors in the life settlement scheme were the same as those behind the fraudulent oil and gas scheme, and that the life insurance policies underlying the proposed investment were nonexistent. Id. ¶ 39.

At some point, Amsler told the Pelinis that the life settlement investment vehicle was taken over by Jeremy Dillon and AG Wealth Systems. Dillon countersigned the Pelinis subscription agreement on March 22, 2022, and transferred the Pelini $250,000 investment to TVPX Life Settlement Services. Id. ¶ 40. To explain the transfer, Amsler provided the Pelinis a "transfer agreement" that purports to transfer assets from Heartland Group Ventures, Pearsey, and Muratore to Dillon and AG Wealth Systems, LLC. But when he provided the agreement, Amsler knew that Heartland Group Ventures had been placed in receivership. Id. ¶ 41. Thus, Pelini alleges that the transfer agreement was a sham. Id.

As a result of Defendants' concerted conduct, including that of Amsler, DSA Smart Fund, and Muratore, the elder Pelini's investment was placed in a bogus investment in non-existent life insurance policies and then converted by Defendants. Id. ¶ 42. Requests for a return of funds have been ignored.

**B.  PROCEDURAL BACKGROUND**

Pelini commenced this action on September 29, 2023, to recover the funds solicited by Amsler, and for which Amsler received a commission. ECF No. 1. To date, Defendant Brunson

4

filed an Answer to the Complaint, ECF No. 25, and Muratore, Amsler, and DSA Smart Fund filed the pending Motion to Dismiss,[4] ECF No. 61. Pelini filed his response to Motion to Dismiss, ECF Nos. 68, 69, 71. Muratore, Amsler, and DSA Smart Fund filed a Reply and supporting exhibits. ECF Nos. 72, 74.

The Motion to Dismiss is ripe for consideration.

**C.     STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-CV-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Mergl, 2022 WL 4591394, at *3 (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)).

---

[4] Pelini failed to serve the complaint on many of the named Defendants. ECF Nos. 6, 7, 22, 23. Pelini was granted leave to serve the complaint by alternative means and has been granted extensions of time to effectuate service. ECF No. 24, 34. Pelini has requested the entry of default against the remaining Defendants. However, the Clerk of Court declined the request because the documents proffered in support of the request do not evidence that service by alternative means has been accomplished on the allegedly defaulting Defendants. See Docket Entry February 6, 2025.

5

Pelini's claims for fraud must also meet the pleading requirements of Fed. R. Civ. P. 9(b). Under Rule 9(b), when a party alleges fraud, they "must state with particularity the circumstances constituting fraud" and "[m]alice, intent, knowledge and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). To meet this standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). The particularity in pleading must be sufficient to "place the defendants on notice of the precise misconduct with which they are charged[.]" Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), *abrogated on other grounds by* Williams v. Medley Opp. Fund II, LP, 965 F.3d 229, 242 (3d Cir. 2020).

After review, if the complaint states sufficient facts to state a plausible claim, the motion to dismiss must be denied.

**D.   DISCUSSION**

    **1.   Fraud**

Moving Defendants present six arguments in support of their contention that the Complaint fails to state a claim for fraud. Most seek dismissal based on the heightened pleading standards for federal securities class actions brought under the Securities Exchange Act of 1934, and in particular the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4 et seq. However, Pelini brings a common law fraud claim.

"Generally, fraud consists of any action or conduct that is calculated to deceive, whether by single act or combination or by suppression of the truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word or mouth, or look or gesture." Kester v. Zimmer Holdings, Inc., No. 2:10-CV-00523, 2010 WL 2696467, at *11 (W.D. Pa. June

6

16, 2010) (citing Tyler v. O'Neill, 994 F. Supp. 603, 612 (E.D. Pa. 1998), in turn citing Michael v. Shiley, Inc., 46 F.3d 1316, 1333 (3d Cir. 1995); Sowell v. Butcher & Singer, Inc., 926 F.2d 289 (3d Cir. 1991)).

To state a claim for fraud under Pennsylvania law, a plaintiff must show "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). Pennsylvania permits recovery for false statements and for deliberately concealed facts. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 205 (3d Cir. 2022) (citing Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991) ("The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement.")).

Measured against the elements of a common law claim, the Court addresses in order Moving Defendants' arguments related to the sufficiency of Pelini's allegations.

### a. Materiality of Alleged Misstatements

Moving Defendants contend that the Motion to Dismiss should be granted because the alleged misstatements by Amsler about the benefits of the proffered life settlement opportunity are "puffery" and "general statements of opinion [that] cannot form the basis for a fraud claim." ECF No. 62 at 13-14. The Moving Defendants point in isolation to statements that the alternative life settlement opportunity was "much better, more secure, and [would provide a] higher return on their investment" in comparison to the oil and gas investment, and that the life settlement investment would be "highly profitable, conservative, sure fire as it was based upon life insurance policies of insured who would, without doubt, surely die at some point in the future." Id. at 13.

7

Moving Defendants rely on In re Advanta Corp. Sec. Litig., 180 F.3d 525, 538 (3d Cir. 1999). In Advanta, the United States Court of Appeals for the Third Circuit explained the heightened pleading requirements for actions commenced under the PSLRA, 15 U.S.C. § 78u–4 *et seq*. The PSLRA requires allegations to support scienter, and further precludes claims based on "vague and general statements of optimism [that] 'constitute no more than 'puffery' and are understood by reasonable investors as such.'" Advanta, 180 F.3d at 538–39 (*overruled on other grounds by* Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308 (2007)). The statements at issue in Advanta included positive portrayals of past success and expressions of confidence in Advanta's prospects for future growth. The Third Circuit held that "[f]actual recitations of past earnings, *so long as they are accurate*, do not create liability under Section 10(b)." Id. (emphasis added). "Such statements, even if arguably misleading, do not give rise to a federal securities claim because they are not material: there is no 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" Id. (citations omitted).

Here, Pelini alleges a state law fraud claim, not a PSLRA claim. In support, he asserts that Amsler's October 2020-April 2022 solicitations contained material misrepresentations that included, among others, statements about the existence of oil and gas wells and life insurance policies underlying the solicited investments. See, e.g., ECF No. 1 ¶¶ 31-41, 49 ("In fact, there are no legitimately owned life insurance policies possessed by the Defendants which could or were properly hypothecated to the Pelinis and this truth was known by …. Defendant Amsler and the Heartland Defendants to be false."). Pelini also alleges that Amsler contacted the Pelinis in December 2021 and misrepresented the reasons for delaying and then shifting the elder Pelini's investment from Heartland's oil and gas venture to Heartland-related life settlements, and alleges

that Amsler failed to disclose the ongoing SEC action against Heartland and its principals, including Muratore. Id. ¶¶ 36-39. These allegations, among many others, are not "puffery" but are material to the transactions at issue and "inject precision or some measure to substantiation" to support Pelini's fraud claim against Amsler and DSA Smart Fund. At this stage, taking the allegations as true and in the light most favorable to Plaintiff, the Court finds that Pelini has adequately pled that Amsler made fraudulent material representations about the initial oil and gas investment and the later solicited life settlement investment.

### b. Scienter

Moving Defendants assert that "Plaintiff's conclusory, barebones allegations of Defendants' scienter do not make the pleading grade and are another basis for dismissing the fraud claims as to the alleged misstatements involving the existence of the underlying insurance policies of the life settlements investment." ECF No. 62 at 15. In support, Moving Defendants rely on the pleading standards for claims asserted under the PSLRA and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b). ECF No. 62 at 15 (citing GSC Partners CDO Fund v. Washington, 368 F.3d 228, 239 (3d Cir. 2004), In re Burlington Coat Factory Securities Lit., 114 F.3d 1410, 1418 (3d Cir. 1997)).

Under the PSLRA, a plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.* the defendant's intention 'to deceive, manipulate or defraud.'" Tellabs, 551 U.S. at 313 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194, and n. 12 (1976); 15 U.S.C. § 78u–4(b)(1)). But, again, Pelini brings a common law fraud claim – not a PSLRA claim. Thus, to recover, Pennsylvania law requires "proof that the actor acted intentionally." Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 647 (Pa. 2021) (citing Bortz v.

Noon, 729 A.2d 555, 561 (Pa. 1999). At this stage of the litigation, supporting allegations of intent need only meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

As earlier discussed, Rule 9(b) imposes a heightened pleading requirement of particularity with respect to allegations of fraud, and thus a party alleging fraud must provide factual details such as "the who, what, when, where and how of the events at issue." U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002)). But "conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, if allegations of fraud and misrepresentation are otherwise supported, the lack of underlying facts setting forth intent with particularity does not require dismissal of a fraud claim.

In this case, Pelini alleges that when Amsler made various misstatements, he was soliciting investments as a Heartland broker, as reflected on his business card. Given the scope of the SEC litigation and the reasons provided by Amsler for the delay in issuing the elder Pelini's oil and gas investment documentation, the Court concludes that the Complaint and the SEC Complaint attached thereto support the inference that Amsler knew or learned of the SEC litigation and knew that many of his representations were false. Additional support is found in allegations that Amsler held the elder Pelini's investment funds in his own account beginning in late September 2021 and that once the SEC litigation officially started on December 1, 2021, Amsler redirected the Pelinis from the charged oil and gas scheme to the equally fraudulent Heartland life settlement scheme. This redirection was conducted without disclosing that the oil and gas scheme was subject to an SEC fraud investigation and lawsuit. ECF No. 1 ¶¶ 33, 38-39. While a close question, these facts make plausible a claim that Amsler knew or recklessly disregarded whether his representations after December 1, 2021 related to the oil and gas venture were false, and that he knew or recklessly

disregarded whether his later representations related to the reasons for the change in investment firm, focus, and personnel were false. Because these allegations are sufficient to show intent to defraud, it is recommended that the Court deny the Motion to Dismiss based on the sufficiency of allegations of scienter.

### c. Misstatements as to Life Settlement Investments

Moving Defendants assert that Pelini has not pled with sufficient particularity facts supporting his claim that Amsler knew that an agreement to transfer Heartland Life Settlement assets from Muratore and Pearsey to Dillon's company, AG Wealth Systems, LLC, was a "sham," and intended to cover up the pending SEC oil and gas action. ECF No. 62 at 17.

In the Complaint, Pelini alleges that "[u]pon information and belief this transfer is a sham transaction" and that Amsler knew the transfer was a sham when the asset transfer was explained to Pelini. ECF No. 1 ¶ 41. Moving Defendants contend that under Rule 9(b), Pelini can allege a fact based on "information and belief," but that he must "set forth the specific facts upon which the belief is reasonably based." ECF No. 62 at 17. Because Pelini fails to do so, Moving Defendants seek dismissal of "fraud claims tied to these life settlement investment representations." Id. at 18.

Under Rule 9 (b), "plaintiffs may plead certain factual allegations based 'upon information and belief' but must allege that the necessary information lies within the defendant's control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." Gross v. Coloplast Corp., 434 F. Supp. 3d 245, 249 (E.D. Pa. 2020) (citing Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989)).

The Court agrees that Pelini fails to allege that the relevant information is in Moving Defendants' control. Pelini also fails to allege any facts to support his claim that the life settlement investment transfer to Dillon and AG Wealth Systems, LLC was a "sham transaction" or facts that

11

make plausible his allegation that Amsler or any other Defendant knew it was a "sham transaction." Thus, Pelini's allegations related to the transfer of assets to Dillon that are stated, "upon information and belief" are not enough to satisfy the pleading requirements of Rule 9(b). It is recommended that the Court allow Pelini to amend his Complaint to correct the identified pleading deficiency. Absent further amendment, the Court should preclude reliance on the allegations set forth at paragraph 41 of the Complaint to support an independent fraud claim related to the "sham" nature of the life settlement investment asset transfer related.

### d.   Applicability of "Bespeaks Caution" Doctrine

Moving Defendants raise the "bespeaks caution" doctrine as a bar to Pelini's fraud claims that are based on Amsler's written or oral statements and omissions. ECF No. 62 at 18-22. Moving Defendants argue that cautionary language in the life settlement offering documents provided by Amsler and signed by Pelini "bespoke caution." Thus, "reliance on Amsler's alleged oral statements and omissions [was] unreasonable as a matter of law." Id. at 18.

The Third Circuit has recognized the common law bespeaks caution doctrine as applied to securities fraud actions arising under federal law. See In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 371-373, 377 (3d Cir. 1993) (applying doctrine to class action federal securities fraud claims).[5] If applicable to state law fraud, the doctrine would not bar Pelini's claims.

The bespeaks caution doctrine ... provides that when:

> [F]orecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the 'total mix' of information ... provided investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.

---

[5] The doctrine does not provide protection from all fraud-related claims. In Trump, the Third Circuit affirmed the dismissal without prejudice plaintiffs' breach of fiduciary duty and false advertising state law claims for lack of pendent jurisdiction. Trump, 7 F.3d at 377.

12

> In re Trump, 7 F.3d at 371. The doctrine is a "shorthand for the well-established principle that a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law." Id. at 363. However, the doctrine does not automatically render all disclaimers inactionable. A "vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation." Id. at 371. To be protected under the doctrine, "the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge." Id. at 371–72.

Howard v. Arconic Inc., 395 F. Supp. 3d 516, 554 (W.D. Pa. 2019).

Pelini's Complaint identifies several misrepresentations by Amsler that induced the elder Pelini's initial investment related to allegedly existing oil and gas well projects and his continued participation in the life settlement investment, including:

1. fabricated reasons for the delay in providing proof of the elder Pelini's investment in Heartland's oil and gas well projects, ECF No. 1 ¶¶ 36-38;

2. misrepresenting the reasons for redirecting the oil and gas investment to a fraudulent life settlement investment after the initiation of the SEC Heartland oil and gas investment fraud litigation, id. ¶ 39;

3. misrepresenting the existence of life insurance policies upon with the life settlement investment was based, id.; and,

4. misrepresenting the reasons for the transfer of Pelini's Heartland life settlement investment entitites to AG Wealth Systems and Defendant Dillon, id. ¶¶ 40-41.

These statements are not forward-looking forecasts, opinions, or projections, but are statements of fact and thus would not fall within the protection of the bespeaks caution doctrine. Thus, it is recommended that the Court deny the Motion to Dismiss based on the bespeaks caution doctrine.

### e. Sufficiency of Allegations Against Muratore

Moving Defendants present two related arguments in support of their Motion to Dismiss all claims against Muratore. First, Moving Defendants contend that Muratore was not involved in any Heartland Life Settlement entity at the time the elder Pelini made his investment and, second, Pelini fails to attribute any allegedly misleading statement or omission to him. ECF No. 62 at 22-24. Instead, the alleged fraudulent conduct is asserted against "Heartland Defendants" without individual attribution.

Upon review, Pelini alleges that all Defendants "made additional and further false representations to the Pelinis about and concerning the Heartland Life Settlement investment." ECF No. 1 ¶ 49. As to his conspiracy to commit fraud claim, Pelini further alleges that "[t]he Pelinis justifiably relied upon Defendants' misrepresentations, actions[,] and omissions." Id. ¶ 58. The Court agrees that as to Muratore, Pelini's group pleading fails to satisfy the particularity requirements of Rule 9(b).

"[W]here, as here, a case involves multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" Tredennick v. Bone, 647 F. Supp. 2d 495, 501 (W.D. Pa. 2007), aff'd, 323 F. App'x 103 (3d Cir. 2008) (quoting Silverstein v. Percudani, 422 F. Supp. 2d 468, 472–473 (M.D. Pa. 2006) (citations omitted)). "A complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations." Id.

Pelini not only fails to assert valid allegations that concern the date, place, or time of the alleged fraud to fulfill the requirements of Rule 9(b), he also fails to plead any alternative means of injecting precision and some measure of substantiation into his allegations of fraud against Muratore. Under these circumstances, it is recommended that the Court grant the Motion to

Dismiss all fraud claims against Muratore. That said, Pelini may be able to correct the identified pleading deficiencies. Therefore, it is further recommended that dismissal be without prejudice and with leave to file an amended complaint within 21 days of the Court's order.

### 2.     Conspiracy to Commit Fraud

Moving Defendants seek dismissal of Pelini's state law conspiracy to commit fraud claim because the Complaint fails to allege an underlying fraud claim. ECF No. 62 at 24. "In order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Marion v. Bryn Mawr Tr. Co., 288 A.3d 76, 88 (Pa. 2023) (citation modified). In addition, a civil conspiracy claim requires "an independent cause of action for the acts alleged." Sarpolis v. Tereshko, 625 F. App'x 594, 601 (3d Cir. 2016) (citing Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987)).

As discussed above, the Court concludes that at this stage of the litigation Pelini sufficiently alleges an underlying fraud claim against Amsler and his solely operated DSA Smart Fund, but not as to Muratore. Moving Defendants do not argue or demonstrate the absence of a fraud claim against another other named Defendant. Thus, it is recommended that the Court grant the Motion to Dismiss as to Muratore, but deny the Motion to Dismiss Pelini's civil conspiracy claim against Amsler and DSA Smart Fund.

### 3.     Breach of Fiduciary Duty

Under Pennsylvania law, "[a] fiduciary relationship exists 'whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms.' [In re Clark's Est., 359 A.2d 777, 781 (Pa. 1976)]. In contrast to an ordinary arm's-length relationship where each party owes the other only a duty of good faith and fair dealing, a

15

fiduciary 'must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage.'" Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am., 949 F. Supp. 2d 599, 611 (W.D. Pa. 2013) (quoting Young v. Kaye, 279 A.2d 759, 763 (Pa. 1971)).

Moving Defendants seek dismissal of Pelini's claim for breach of fiduciary duty for failure to state a claim because "no fiduciary relationship existed the Plaintiff and Defendants Amsler, DSA Smart Fund, and Muratore." ECF No. 62 at 25.

Pelini responds that the claim is properly pled as to Amsler and DSA Smart Fund, who allegedly exercised "overmastering influence" over the Pelinis, resulting in the retention of investment funds for over six months, and their eventual conversion. ECF No. 68 at 14-15; ECF No. 1 ¶ 45.

> There are two ways to establish a fiduciary relationship.
>
> First, it may be shown by demonstrating the existence of a relationship ordinarily known to be fiduciary as a matter of law, such as that between a "trustee and [beneficiary], guardian and ward, attorney and client, and principal and agent." Leedom v. Palmer, 274 Pa. 22, 117 A. 410, 412 (1922). Second, it may be established as a matter "of fact to be decided by evidence." Id. The "disparity in position between the parties" is the key factor in determining whether a fiduciary-in-fact relationship developed between parties in an otherwise arm's-length business relationship. Weir by Gasper v. Ciao, 521 Pa. 491, 556 A.2d 819, 825 (1989).

Reginella Const. Co., 949 F. Supp. 2d at 611. Pennsylvania courts have recognized that the second situation arises from a confidential relationship that "'cannot be reduced to a catalogue of specific circumstances, invariably to the left or right of a definitional line.'" Basile v. H & R Block, Inc., 777 A.2d 95, 101 (Pa. Super. Ct. 2001) (quoting In re Scott's Est., 316 A.2d 883, 885 (Pa. 1974)). "[T]he essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." Id. Thus, "those who purport to give

16

advice in business may engender confidential relations if others, by virtue of their own weakness or inability, the advisor's pretense of expertise, or a combination of both, invest such a level of trust that they seek no other counsel." Id. at 102 (citing Frowen v. Blank, 425 A.2d 412, 416-17 (Pa. 1981) (finding a confidential relationship between an elderly widow who sold her farm to a neighbor friend because the widow demonstrated weakness and trust)). See also Andrews v. JPA R/E Assocs., L.P., No. 24-2371, 2025 WL 1685648, at *7 (E.D. Pa. June 13, 2025) ("Plaintiffs were not experienced or sophisticated investors, and accordingly, they reposed their trust and confidence in Mr. Pezzano based on his self-proclaimed expertise. Considering the special confidence Plaintiffs placed in Mr. Pezzano and the unequal position of the parties, Plaintiffs have adequately pled the existence of a fiduciary relationship ….").

In this case, the elder Pelini is described as a 92-year-old man who Amsler solicited repeatedly over the course of nearly a year to obtain a substantial investment. ECF No. 1 ¶¶ 14, 30-31. After obtaining the funds, Amsler did not invest them as agreed but represented to the Pelinis that he "was taking responsibility to hold the Principal in escrow and act as the Pelini's fiduciary agent and investment advisor." Id. ¶ 35. Accepting these allegations as true and drawing all inferences in Pelini's favor, Pelini alleges a plausible claim that Amsler acted in a position of advisor to "inspire confidence that he [would] act in good faith for the [Pelinis'] interest[s]," and thus that he breached a fiduciary duty to act in the Pelinis' best interests. Basile, 777 A.2d at 102. Accordingly, it is recommended that the Court deny the Motion to Dismiss Pelini's breach of fiduciary duty claim.

4. **Conversion**

Pelini alleges a common law claim for conversion against all Defendants for their retention of the Pelini investment principal despite a demand for the return of the funds. ECF No. 1 ¶¶ 47-50.

Moving Defendants argue that Pelini fails to state a claim for conversion because he "cannot plead that Mr. Amsler invested his funds without lawful justification – he had a signed Subscription Agreement and Mr. Pelini authorizations permitting his alleged actions." ECF No. 62 at 26.

"Under Pennsylvania law, 'conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.'" Berlekamp Fam. Invs., LLC v. Pipich, No. 2:24-CV-825, 2024 WL 4799912, at *2 (W.D. Pa. Nov. 15, 2024) (quoting Stevenson v. Econ. Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)). "To make out a conversion claim based on the unreasonable withholding of property, there must be a demand for and a refusal to return the property." Id.

Moving Defendants do not dispute that the funds at issue are chattel for which a conversion claim may be stated. Instead, Moving Defendants rely on the elder Pelini's purported authorization through a signed Subscription Agreement, executed on November 23, 2021, and two verifications that Moving Defendants contend authorized Amsler to invest the funds in the life settlement offerings. ECF No. 62 at 26.

The Third Circuit has observed that under Pennsylvania law, beyond taking chattel without authorization, "[a] deliberate taking of another's personal property with the consent of that person to use it for one purpose, but with the intent of using it for another in conflict with that person's interest is also conversion." Cenna v. United States, 402 F.2d 168, 170 (3d Cir. 1968) (citing

Gottesfeld v. Mechanics and Traders Ins., 173 A.2d 763, 766 (Pa. Super. Ct. 1961), cited with approval in Stevenson v. Econ. Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)).

Based on the allegations set forth in the Complaint and at this early stage of the litigation, the Court concludes that Pelini states a plausible claim under this alternative theory of conversion. Sbarra v. Horizontal Expl., LLC, No. 14-866, 2016 WL 32688860, at *8 (W.D. Pa. June 15, 2016). Accordingly, it is recommended that the Court deny the Motion to Dismiss Pelini's claim for conversion.

### E.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 61, be granted without prejudice and with leave to amend as to Pelini's claims against John Muratore and any independent claim based on the transfer of assets to Dillon and AG Wealth Systems. It is further recommended that the Motion to Dismiss be denied in all other respects.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

> Respectfully submitted,
>
> /s/ Maureen P. Kelly
> MAUREEN P. KELLY
> UNITED STATES MAGISTRATE JUDGE

Dated: July 23, 2025

cc: The Honorable Mark R. Hornak
United States District Judge

All counsel of record via CM/ECF